**Opinion issued April 3, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————————

## NO. 12-00891-CR

————————————————

**PEYTON ASHLEY SIMPSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from Chambers County Court**
**Chambers County, Texas**
**Trial Court Case No. 28375**

---

## MEMORANDUM OPINION

A jury found Appellant guilty of the misdemeanor offense of driving while intoxicated.[1] The trial court sentenced Appellant to 180 days in jail, suspended the sentence, placed him on community supervision for 18 months, and assessed a $1,200 fine.

---

[1] *See* TEX. PENAL CODE ANN. § 49.01 (Vernon 2011).

Appellant raises four issues on appeal. He asserts the trial court erred by denying his motion to exclude a video recording, by failing to file findings of fact and conclusions of law to support the basis for denying the motion, and by failing to hold a hearing on his motion for new trial.

We affirm.

## Background Summary

At 2 a.m. on June 18, 2011, Trooper T. Norsworthy of the Texas Department of Public Safety was patrolling FM 565, a two lane road, in Chambers County. He saw a truck, driven by Appellant, twice cross over the center line into the opposite lane of traffic. Trooper Norsworthy activated his emergency lights to initiate a traffic stop of Appellant's truck. When he activated his emergency lights, the dashboard video recording device in the trooper's car was also activated. When he got out of his patrol car, Trooper Norsworthy turned on the microphone that he wore on his uniform, referred to as a body microphone.

As he approached Appellant's truck, Trooper Norsworthy saw Appellant attempting to light a cigarette. Appellant was fumbling as he tried to light it. Trooper Norsworthy instructed Appellant not to light the cigarette. Trooper Norsworthy noticed that Appellant smelled of alcohol and had blood-shot eyes. The officer requested Appellants driver's license and insurance. Trooper

2

Norsworthy asked Appellant to step out of his truck. Appellant stumbled, and Trooper Norsworthy observed that Appellant's reactions were delayed.

When Trooper Norsworthy asked Appellant from where he was coming, Appellant replied that he been at his uncle's house, but then he admitted that he had been at a local bar. Trooper Norsworthy asked Appellant if he had been drinking that night, and Appellant responded that he had. When the officer asked Appellant how much he had to drink, Appellant answered, "Quite a bit." Trooper Norsworthy inquired how much was "quite a bit?" Appellant said that he had drunk 10 to 12 beers that night.

Trooper Norsworthy then asked Appellant, on a scale of zero to ten, with zero being not at all intoxicated, and ten being highly intoxicated, how intoxicated he was. Appellant indicated six on the intoxication scale.

Trooper Norsworthy inquired whether Appellant would participate in field sobriety tests. Appellant initially indicated that he would take the tests, but then he indicated that he would not participate in the testing. At that point, Trooper Norsworthy asked Appellant to turn around and place his hands behind his back. Trooper Norsworthy then put handcuffs on Appellant, arresting Appellant for the offense of driving while intoxicated.

The video camera in Trooper Norsworthy's patrol car visually recorded the stop and the officer's interaction with Appellant. Trooper Norsworthy's body

microphone recorded the conversation between Trooper Norsworthy and Appellant, although some of Appellant's responses to the officer at the scene cannot be understood.

As he was placing the handcuffs on Appellant, Trooper Norsworthy's microphone stopped working. The last thing heard on the video is Trooper Norsworthy instructing Appellant to turn around and to place his hands behind his back. The dashboard camera, however, continued to record the scene visually as Trooper Norsworthy walked Appellant back to the patrol car.

After he seated Appellant in the back of the patrol car, Trooper Norsworthy searched Appellant's truck. During the search, Trooper Norsworthy found an open bottle of beer, which was half full of beer and still cold.

Trooper Norsworthy transported Appellant to the local police station. During the transport, the officer turned the camera around facing the inside of the cab of his patrol car. Trooper Norsworthy and Appellant conversed during the ride but no audio was recorded of the conversation.

After they arrived at the police station, and while Appellant was still seated in the patrol car, Trooper Norsworthy read the DIC-24 form to Appellant containing the statutory warnings required before an officer may request a blood or breath specimen. The last few minutes of the video shows Trooper Norsworthy opening the back door of the patrol car, leaning over Appellant, and speaking to

4

Appellant. Trooper Norsworthy testified that this showed him reading the DIC-24 form to Appellant.

Appellant refused to sign the DIC-24 form. He also refused to give the breath specimen requested by Trooper Norsworthy.

Appellant was charged by information with the misdemeanor offense of driving while intoxicated. Before trial, Appellant filed motions to suppress and to exclude the video that had been recorded by the camera mounted on the dashboard of Trooper Norsworthy's patrol car. At a pretrial hearing, the trial court determined that the motions would be heard during trial, outside the presence of the jury.

After trial commenced, the trial court conducted a suppression hearing outside the presence of the jury. At the hearing, Appellant sought to have the video excluded because there was no audio recorded on the video after the point at which Trooper Norsworthy placed the handcuffs on Appellant. Appellant asserted that Trooper Norsworthy purposefully turned off the microphone at that point.

Trooper Norsworthy testified at the hearing. With respect to this issue, the officer testified that the battery for the microphone he wore was not fully charged and had stopped working at the time he placed the handcuffs on Appellant.

Trooper Norsworthy also testified that the microphone in the cab of his patrol car was not working on the date of the arrest. The officer explained that a

5

"cage" to hold prisoners in the backseat of his patrol had been installed that week. During the installation, a wire to the microphone in the patrol car had been cut, and it had not yet been fixed.

At the hearing, Appellant argued that admission of the video, with the missing audio portions, violated Code of Criminal Procedure article 38.22, section 3(a)(3) because it was not an accurate recording of a custodial interrogation.[2] Appellant alleged that Trooper Norsworthy had deliberately turned off his body microphone. The trial court overruled Appellant's motions to exclude and to suppress the admission of the video.

Before the State admitted the video at trial, Appellant objected to its admission on the ground that it was "not a fair and accurate recording of the totality of the circumstances." The trial court overruled the objection and the video, in its entirety, was admitted into evidence. The State also offered into evidence the DIC-24 form. The only witness to testify for the State was Trooper Norsworthy. The defense presented no witnesses.

The jury found Appellant guilty of the offense of driving while intoxicated. Appellant choose to have the trial court assess punishment. The trial court sentenced Appellant to 180 days in jail, suspended the sentence, placed him on community supervision for 18 months, and assessed a $1,200 fine.

---

[2] *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(a) (Vernon Supp. 2013 2005).

Appellant filed a motion for new trial. As a basis for new trial, Appellant asserted that he had "discovered material evidence favorable to Defendant as defined by Tex. Code Proc. § 40.001." To support his motion, Appellant attached a federal magistrate's report and recommendation from a drug-possession case pending in United States District Court in Beaumont, Texas. The drug charges in that case do not involve Appellant or the underlying facts of this case. Instead, the charges in the federal case were brought against a person named Coleman, who had been stopped by Trooper Norsworthy for driving too slowly on Interstate 10.

In the report, the federal magistrate recommended granting a motion to suppress filed by Coleman. The recovery of the drugs in that case had resulted from the traffic stop of Coleman's vehicle by Trooper Norsworthy. Coleman asserted that Trooper Norsworthy did not have reasonable suspicion to stop her, and the magistrate agreed with Coleman in his recommendation to the federal district court judge.

Trooper Norsworthy had testified at the suppression hearing. In his recommendation, the magistrate questioned the credibility of Trooper Norsworthy with respect to the officer's testimony regarding how fast Coleman had been driving. The magistrate's report was signed three weeks after the trial in this case.

In his motion for new trial, Appellant asserted that he was entitled to a new trial based on the magistrate's report, which he characterized as "material evidence

7

favorable to [him]." He averred that the magistrate's report "by a fellow court are directly relevant to the credibility of the State's sole witness in this case." Appellant claimed that, using the magistrate's report, he could "effectively cross-examine the State's only witness and raise the issue of the Trooper's credibility based on the findings of a fellow court."

Appellant also offered the affidavit of Coleman's defense attorney. The attorney stated that, based on his "dealings" with Trooper Norsworthy, it was his opinion that Trooper Norsworthy was prone to fabricate or exaggerate facts in criminal cases to make the case more favorable to the State. He opined that Trooper Norsworthy was "not worthy of belief" and not credible. The attorney stated that he would testify to that effect for Appellant in this case.

Appellant timely presented the motion for new trial to the trial court. The court made a notation in the record stating, "No hearing set at the time. Waiting on response from State." No response is contained in the record. Appellant's motion for new trial was not set for hearing. As a result, the motion was overruled by operation of law. This appeal followed.

Appellant presents four issues on appeal.

**Findings of Fact and Conclusions of Law**

In his first issue, Appellant asserts that the trial court erred because it did not file findings of fact and conclusions of law, which Appellant had requested. The

8

State agreed in its brief that the failure to file the findings of fact and conclusions of law was error. *See State v. Cullen*, 195 S.W.3d 696, 700 (Tex. Crim. App. 2006) (stating that, at the request of losing party, trial court is required to enter express findings of fact and conclusions of law).

We abated the appeal to allow the trial court to file findings of fact and conclusions of law in support of its denial of Appellant's motion to exclude the video. After the supplemental clerk's record was received by the Clerk of this Court, which contains the findings of fact and conclusions of law, we reinstated the appeal.[3]

Among the trial court's findings of fact were the following:

19. The audio portion of State's Exhibit 1 [the video] accurately recorded the investigative encounter, beginning with the Trooper's self-introduction to the Defendant, and continued up [to] the point when the Defendant is arrested.

20. No evidence was presented at trial, by either party, of any conversation taking place between Trooper Norsworthy and the Defendant, from the point of arrest and the audio cutting out, until the Trooper read the DIC-24 warnings at jail.
. . . .

22. No evidence exists to support Defendant's assertion Trooper Norsworthy deliberately turned off his body microphone, or in any way intentionally altered or deleted evidence.

---

[3] In light of the newly filed findings of fact and conclusions of law, we permitted the parties to file supplemental briefing; however, no supplemental briefing has been filed.

Among its conclusions of law, the trial court determined that Appellant was detained, not placed under arrest, by Trooper Norsworthy during the criminal investigation. It also concluded that Appellant had not been placed under arrest until Trooper Norsworthy instructed Appellant to turn around and place his hands behind his back to be handcuffed. The court further determined that the audio portion of the video does not contain any custodial interrogation. Lastly, the trial court concluded that it had properly denied Appellant's motion to exclude the video.

In light of the trial court's filing of the findings of fact and conclusions of law, we dismiss Appellant's first issue as moot.

## Admission of Video

In his third and fourth issues, Appellant asserts that the trial court erred by denying his motions to exclude and to suppress the video.

## A. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for an abuse of discretion, but review the trial court's application of the law to the facts de novo. *Id.* We give almost total deference to the trial court's determination of historical facts, particularly when the trial court's fact findings are based on an evaluation of

credibility and demeanor. *Id.*; *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We give the same deference to the trial court's conclusions with respect to mixed questions of law and fact that turn on credibility or demeanor. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012) (citing *Guzman v. State*, 955 S.W.2d 85, 87–89 (Tex. Crim. App. 1997)). We also review de novo mixed questions of law and fact that do not depend on credibility and demeanor. *State v. Woodward*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011); *Guzman*, 955 S.W.2d at 89.

When the trial court makes specific findings of fact, we determine whether the evidence supports those findings. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013). As a general rule, we view the evidence in the light most favorable to the trial court's ruling, affording the prevailing party the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *State v. Duran*, 396 S.W.3d 563, 571 (Tex. Crim. App. 2013).

## B.     Article 38.22

In his fourth issue, Appellant asserts that the trial court erred by admitting into evidence "an incomplete audio recording" in violation of Code of Criminal Procedure article 38.22. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 (Vernon Supp. 2013).

Section 3 of article 38.22 requires that an oral statement made as a result of custodial interrogation be electronically recorded. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 § 3(a). It further requires that "the recording device was capable of making an accurate recording, the operator was competent, and the recording is accurate and has not been altered." *Id.* Appellant asserts that these requirements were not fulfilled because the audio on the video stops at the point at which Trooper Norsworthy formally arrested him by placing him in handcuffs and leading him to the patrol car. Appellant intimates that this noncompliance rendered the whole video—including the portion of the video that has an audio recording—inadmissible under article 38.22.

A review of the record shows that Appellant's incriminating statements introduced at trial—including his admission that he had drunk 10 or 12 beers and that he felt his intoxication level was a six—were made immediately after the traffic stop, while Trooper Norsworthy and Appellant stood near Appellant's truck. The audio of these statements is recorded on the scene video. The State did not introduce any statements made by Appellant after he was formally arrested by Trooper Norsworthy; that is, the State did not ask Norsworthy to testify about any

12

statements made by Appellant after the audio function stopped working on the video.[4]

Article 38.22 specifically exempts statements made outside of custody from the requirement that the statements be recorded. *See id.* art. 38.22 § 5. Statements made during an investigative detention are not subject to the requirements of article 38.22, section 3. *See id.* It is well-settled that, without more, a roadside investigation that includes questioning of a DWI suspect is not a custodial interrogation. *See State v. Stevenson*, 958 S.W.2d 824, 828–29 (Tex. Crim. App. 1997) (citing *Berkemer v. McCarty*, 468 U.S. 420, 441–42, 104 S. Ct. 3138, 3151 (1984)); *Shpikula v. State*, 68 S.W.3d 212, 218 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd).

Here, Appellant's statements, admitted into evidence, were made before his formal arrest, at the scene, during the DWI investigation and within minutes of the traffic stop. The trial court correctly concluded that these statements were not made during a custodial interrogation. *See Berkemer*, 468 U.S. at 441–442, 104 S. Ct. at 3151–52 (holding DWI suspect not in custody until formal arrest).

---

[4] Trooper Norsworthy did testify that, once they arrived at the police station, Appellant refused to sign the DIC-24 form and refused to give a breath specimen; however, the DIC-24 form was introduced into evidence without objection by Appellant. *See Elder v. State*, 132 S.W.3d 20, 27 (Tex. App.—Fort Worth 2004, pet. ref'd) ("The admission of inadmissible evidence can be rendered harmless if the same or similar evidence is introduced without objection elsewhere during trial.").

Accordingly, the State was not obligated to show compliance with article 38.22's requirements as a predicate to have the video admitted into evidence. *See Martines v. State*, 371 S.W.3d 232, 243 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (holding that admission of recording of noncustodial statement did not require State to show article 38.22 compliance).

We hold that the trial court's admission of the scene video did not violate article 38.22. Thus, Appellant has not shown on appeal that the trial court erred when it denied his motions to exclude and to suppress the video recording based on a violation of article 38.22.

We overrule Appellant's fourth issue.

## C. Rule of Evidence 901

In his third issue, Appellant asserts that the trial court's denial of his motions to suppress and to exclude the scene video "contradicts Texas Rule of Evidence 901(a)." In the trial court, Appellant objected to the admission of the scene video on the ground that it was not "a fair and accurate recording of the totality of the circumstances."

When admitting evidence, the trial court inquires "whether the proponent of the evidence has supplied facts that are sufficient to support a reasonable jury determination that the evidence he has proffered is authentic." *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012). Rule of Evidence 901 governs the

14

admissibility of electronic recordings. *Jones v. State*, 80 S.W.3d 686, 688 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *see* TEX. R. EVID. 901.

Rule 901(a) provides that authentication is "satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." TEX. R. EVID 901(a). Rule 901(b) contains a nonexclusive list of methods for authenticating evidence, including testimony from a witness with knowledge "that a matter is what it is claimed to be." TEX. R. EVID. 901(b)(1).

Appellant does not assert that the video recording admitted into evidence is not a recording of his conversation with Trooper Norsworthy at the scene. Indeed, Trooper Norsworthy's testimony indicated that the video contained a recording of the activities and conversation between him and Appellant while the officer was conducting the investigation along the roadside. Instead, Appellant challenges the admission of the video because it does not contain any audio recording for the portion of the tape when Appellant was seated in the backseat of the patrol car after his arrest. It is undisputed that Trooper Norsworthy and Appellant engaged in some conversation while Appellant was in the backseat; however, the content of the dialogue cannot be heard.

Appellant argues that, because the audio on the video was incomplete, the recording was "not a true and accurate representation of the events that took place on the night of Appellant's arrest." Appellant further asserts that the incomplete

15

audio recording "[did] not give the jury a complete understanding of the context in which any of Appellant's statements were made." He compares the video to a recording that contains pauses or breaks. *Cf. Angleton v. State*, 971 S.W.2d 65, 69 (Tex. Crim. App. 1998) (holding that audio recording that had been enhanced to eliminate background noise was admissible pursuant to Rule 901 and noting in the analysis that recording contained no pauses or breaks).

In his testimony, Trooper Norsworthy explained why there was no audio on the portion of the video in which Appellant was seated in the patrol car. He testified that the battery on his body microphone ran out of power at the point he arrested Appellant. He also explained why the microphone in the cab of his patrol car was not operational on that date. Trooper Norsworthy testified that the video depicted him transporting Appellant to the police station but was clear in his testimony that there was no audio recording made during that time. Trooper Norsworthy did not mention any statements made by Appellant while he was transporting Appellant to the police station. Nor did the State offer, refer to, or otherwise rely on any statements made by Appellant while he was being transported.

Trooper Norsworthy also testified that he is seen at the end of the video reading the warnings in DIC-24 form to Appellant, after they arrived at the police station. In the video, Appellant is seen seated in the back of the patrol car.

16

Appellant's back door is open, and Trooper Norsworthy is standing near him, leaning over. Trooper Norsworthy is speaking to Appellant with some papers in his hands. Trooper Norsworthy testified that Appellant refused to sign the form and refused to give a breath specimen. In conjunction with Trooper Norsworthy's testimony, the DIC-24 form was admitted into evidence without objection.

Based on the record, we conclude that Trooper Norsworthy's testimony was sufficient for the trial court to determine that the video recording was what Trooper Norsworthy and the State claimed it to be. *See* TEX. R. EVID. 901(a); *see also Hines v. State*, 383 S.W.3d 615, 624 (Tex. App.—San Antonio 2012, pet. ref'd). However, even if Appellant is correct, and the trial court erred in admitting the video recording, we hold any such error was harmless.

Erroneous admission of evidence is non-constitutional error and must be disregarded unless it affects substantial rights. TEX. R. APP. P. 44.2(b). We must examine the record as a whole and have "'fair assurance that the error did not influence the jury, or had but a slight effect'" to determine that substantial rights are not affected. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002) (quoting *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001)). Only if we have a "grave doubt that the result of the trial was free from the substantial effect of the error" will we reverse a conviction. *Barshaw v. State*, 342 S.W.3d 91, 94 (Tex. Crim. App. 2011). Grave doubt exists when the matter is so evenly

17

balanced that the judge feels "'in virtual equipoise as to the harmlessness of the error.'" *Id.* (quoting *Burnett v. State*, 88 S.W.3d 633, 637–38 (Tex. Crim. App. 2002)).

In this case, the video depicted, visually and audibly, the conversation between Appellant and Trooper Norsworthy, which took place immediately after the traffic stop. This is the portion of the video relied on by the State to prove intoxication, containing the incriminating statements made by Appellant.

The State also offered other evidence of intoxication. Trooper Norsworthy testified that he observed signs that Appellant was intoxicated, which are not depicted in the video. He stated that Appellant smelled of alcohol, had blood-shot eyes, and delayed reactions. The officer also testified that he found a half-full bottle of beer in Appellant's truck that was still cold, indicating that Appellant had been drinking before the stop.

Lastly, as mentioned, the State did not rely on any statements or conduct of Appellant during the portion of the video when the audio function was not working. The only exception to this is when Trooper Norsworthy explained the DIC-24 form to Appellant. However, as mentioned, the form was introduced into evidence without objection. Accordingly, any error in the admission of the video recording did not affect Appellant's substantial rights and was harmless error. *See* TEX. R. APP. P. 44.2(b).

18

Based on the foregoing, we conclude that the trial court did not err in admitting the videotape, and that if it did, such error was harmless. We overrule Appellant's third issue.

**Hearing on Motion for New Trial**

In his second issue, Appellant asserts that the trial court erred when it did not hold a hearing on his motion for new trial.

The purpose of a hearing on a motion for new trial is (1) to decide whether the cause should be retried and (2) to prepare a record for presenting issues on appeal in the event the motion is denied. *Smith v. State*, 286 S.W.3d 333, 338 (Tex. Crim. App. 2009). A defendant, however, does not have an absolute right to a hearing on his motion for new trial. *Hobbs v. State*, 298 S.W.3d 193, 199 (Tex. Crim. App. 2009). Rather, he is entitled to a hearing when he (1) raises matters which are not determinable from the record and (2) establishes reasonable grounds showing that he could potentially be entitled to relief. *Id.*

We review the trial court's denial of a hearing on a motion for new trial for an abuse of discretion. *Smith*, 286 S.W.3d at 339. A trial court abuses its discretion when the ruling "was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Id.* "Our review . . . is limited to the [trial court's] determination of whether the defendant has raised grounds that are

both undeterminable from the record and reasonable, meaning they could entitle the defendant to relief." *Id.*

Here, Appellant claims that he is entitled to a hearing on his motion for new trial to permit him to develop and to supplement the record with newly discovered evidence, which is favorable to him. Appellant cites the federal magistrate's report and recommendation, and the defense attorney's affidavit, from the unrelated Coleman drug case in which the federal magistrate recommended granting Coleman's motion to suppress and commented on Trooper Norsworthy's credibility as it related to one aspect of his testimony in that case. Appellant asserts the magistrate's report and the attorney's affidavit speak to the credibility of Trooper Norsworthy, the State's only witness. Appellant asserts, "Impeachment evidence, such as that presented by the federal case, would present a direct challenge to the reliability of the evidence presented by the State at trial."

A defendant is not entitled to a hearing on a motion for new trial unless the motion and supporting affidavits reflect that reasonable grounds exist for granting a new trial. *See Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003); *see also Espinoza v. State*, 185 S.W.3d 1, 6 (Tex. App.—San Antonio 2005, no pet.). Reasonable grounds exist for granting a motion for new trial on newly-discovered evidence only when the motion meets the requirements of article

20

40.001 of the Code of Criminal Procedure. *See Wallace*, 106 S.W.3d at 108; *Espinoza*, 185 S.W.3d at 6.

Article 40.001 provides that "[a] new trial shall be granted an accused where material evidence favorable to the accused has been discovered since trial." TEX. CODE CRIM. PROC. ANN. art. 40.001 (Vernon 2006). Interpreting this statute, the Court of Criminal Appeals has held that a defendant is entitled to have a motion for new trial granted when

> (1) the newly discovered evidence was unknown to him at the time of trial; (2) his failure to discover the new evidence was not due to his lack of due diligence; (3) the new evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching; and (4) the new evidence is probably true and will probably bring about a different result in a new trial.

*Wallace*, 106 S.W.3d at 108.

Here, Appellant asserts that he seeks to use information from the federal drug case to impeach the credibility of Trooper Norsworthy in this case. As stated in *Wallace*, newly discovered evidence must not merely be impeaching to entitle a defendant to a new trial. *See id.*; *see also Boyett v. State*, 692 S.W.2d 512, 517 (Tex. Crim. App. 1985) (interpreting predecessor to article 40.001).

We conclude that Appellant did not show a reasonable ground existed for granting his motion for new trial based on newly-discovered evidence. *See Boyett*, 692 S.W.2d at 517 (recognizing that evidence which merely impeaches does not show entitlement to a new trial); *Hogan v. State*, 943 S.W.2d 80, 83 (Tex. App.—

21

San Antonio 1997, pet. ref'd) (holding that newly discovered evidence that complainant was known to lie and of a questionable moral character did not entitle appellant to a new trial, in part, because such evidence was merely collateral and impeaching); *Ramirez v. State*, 830 S.W.2d 827, 829 (Tex. App.—Corpus Christi 1992, no pet.) (holding that newly discovered evidence regarding arresting officer's discharge from police force did not justify new trial because evidence was inadmissible and merely impeaching). Thus, we hold that the trial court did not abuse its discretion when it did not hold a hearing on the new trial motion. *See Wallace*, 106 S.W.3d at 108.

We overrule Appellant's second issue.

### Conclusion

We affirm the judgment of the trial court.

Laura Carter Higley
Justice

Panel consists of Justices Jennings, Higley, and Sharp.

Do not publish. TEX. R. APP. P. 47.2(b).

22